## Case No. 5,098.

FRENCH v. EDWARDS et al.

[5 Sawy. 266; 7 Reporter, 68.] [1]

Circuit Court, D. California. Oct. 7, 1878.

John Reynolds, for plaintiff.

J. H. McKune and J. W. Armstrong, for defendants.

SAWYER, Circuit Judge. The plaintiff has title unless it has been cut off in some one of the several modes suggested by defendants. None of the defendants claim title except Lincoln, who claims through a sale and sheriff's deed under a judgment for taxes. He has no other title. If this fails, then he, as well as the other defendants, claims that the title is outstanding in other parties.

The Milliken title relied on by defendants is manifestly void. The judgment by confession entered in 1850, under which Milliken purchased at sheriff's sale, conceding the proceeding to be in due form in other particulars, was not entered upon a statement made by the defendants as required by the statute. St. 1850, p. 454, § 293. The statute evidently contemplates a statement signed by the party in person against whom judgment is authorized to be entered without action. In this case one of the defendants did not sign the statement, but it was signed by a person purporting to sign as his attorney. Those who did sign consented to a judgment against all, not against themselves alone. This point has been decided

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 7 Reporter, 68, contains only a partial report.]

by the supreme court of the state in a case arising under the same statute. Chapin v. Thompson, 20 Cal. 6S7. But if valid, an execution was issued and returned satisfied. That satisfied the judgment. Some six months afterwards the plaintiff assigned the satisfied judgment to one of the principal defendants, who thereupon had another execution issued, and sold thereunder the interest of his co-defendant in the premises in controversy to Milliken. Such a sale under a satisfied judgment could not affect the title. It does not appear that the holders of the Milliken title themselves even claim any interest in the land.

■ As to the matter set up as res adjudicata. The defendants in this case had judgment in 1867. Afterwards the plaintiff, French, conveyed to Vance, who brought suit to recover the premises against the same defendants. They set up as one defense by way of estoppel the said judgment recovered in this case in 1867, and the court held the plaintiff to be estopped by said judgment. Afterwards French sued out a writ of error upon the said judgment in this case of 1867, and it was thereupon reversed at the December term 1871. 13 Wall. [80 U. S.] 506. The case having been remanded to this court for new trial numerous other proceedings were had, and the plaintiff, having in 1877 amended his complaint, the defendants in their answer thereto alleged that Vance, since the said judgment in Vance v. Edwards [supra], had conveyed to Reynolds, who took with notice of said judgment; that the action is now being prosecuted for the benefit of said Reynolds, and then set up in turn as one defense the said judgment in Vance against these defendants by way of estoppel against further litigation herein, which judgment rested solely on the former judgment in this case which had in the meantime been reversed as stated; and this is the matter adjudged now relied on. The question on this point is precisely the same as when presented to this court on motion for leave to file a supplemental answer setting up the Vance judgment. I am entirely satisfied with the view I took on that motion, and content myself with referring to the decision then rendered. French v. Edwards, [Case No. 5,097.]

As to the Martin and Lynch trust. I regard the decision in this case, reported in 21 Wall. [88 U. S.] 150, where the facts are fully stated, as indicating the opinion of the supreme court to be that the presumption arising upon the facts stated is an indisputable or conclusive presumption. It must have been evident to the court that there had in fact been no reconveyance, and the court would scarcely have sent the case back on that point under these circumstances, if it had not deemed the presumption conclusive. The presumption in this class of cases is either conclusive or useless;

and if useless, it might as well not be indulged. The ends of justice in such cases, doubtless require the presumption; but if so, they require it to be indisputable. I shall therefore act upon that view. I have, however, at the request of the defendant, and upon testimony admitted against the objection and exception of the plaintiff, found the fact upon the evidence that no reconveyance was actually executed. It is a fact in the case, and the defendants are entitled to have it found in this special verdict, so that they may have the benefit of it, if I have misapprehended the views of the supreme court as to the character of the presumption arising in the case.

■ As to the alleged Sutter Land Company trust. The Sutter Land Company was an unincorporated company, consisting of more than thirty members. A conveyance of the larger portion of the premises in controversy had been made to Vance, Sneath and Melvin, as trustees for the Sutter Land Company. In 1858, one Pettitt brought an action against the members of the Sutter Land Company for a debt due from the association, making all the members individually parties, and all answered. Vance and Sneath were two of the trustees, and were also parties defendant to the suit as members of the company. A judgment was obtained and a large portion of the property standing in the names of Vance, Sneath and Melvin, sold under an execution issued upon the judgment. All the title acquired under these proceedings became vested in the plaintiff before the commencement of this suit. Two of the three parties vested with the legal title, Vance and Sneath, and all the beneficiaries were parties to the suit. There being no corporation, Vance and Sneath had undivided interests in both the legal and equitable title to the land which was sold, as well as in the part unsold, and, at least, their interest in the part sold, passed by the judgment and sale, and this is sufficient in this state to enable the successor to their interest to recover against all the world except their co-tenants. I think, also, under such a state of facts the entire legal title which was vested in Vance and Sneath, and the entire beneficial interest in the whole, passed. Vance's interest, also, in the part not sold under the execution, passed to plaintiff by subsequent conveyance.

The evidence shows that the enterprise of the Sutter Land Company was long since abandoned, and, although Sneath and Melvin and the secretary of the company were examined as witnesses by defendants, it does not appear, nor am I aware, that any of the association now claim title for themselves, or that they ever have since the sale under said judgment, claimed any interest in said premises; and none of the defendants connect themselves with that title.

■ As to the tax title. After the reversal of the judgment by the decision reported in

13 Wall. [80 U. S.] 506, on the ground that the tax deed originally executed is void upon its face, the defendant, Lincoln, on June 11, 1872—more than six years after the sale and return—procured an ex parte order of the state district court directing the ex-sheriff to amend his return to the order of sale in the tax sale, so as to show that the sheriff sold the least quantity of land that any party would take and pay the taxes and costs, instead of showing a sale to the highest bidder, as the return was originally made; and the ex-sheriff thereupon amended his return in accordance with said order.

On the same day he executed and delivered to Lincoln another deed in which he recited the facts as stated in the amended return.

The defendants thereupon filed supplemental answers setting up the title thus acquired by defendant, Lincoln, through the corrected return and new deed, since the former trial. Plaintiff claims on the one hand, that when the sheriff made his return, executed and delivered his deed in accordance therewith, and went out of office, his power was exhausted; and that even if he could amend his return by stating omitted acts, and make a new deed supplying corresponding defects, he could not amend by falsifying facts before returned, and make a new deed reciting facts inconsistent with his recitals in his first deed. On the other hand it is insisted that the return can be amended so as to correct errors in any particulars, and new deeds be made correct in fact in their recitals at any distance of time; and many authorities are cited to sustain this view.

The current of authorities undoubtedly sustains the general proposition maintained by defendants where no new rights will be gained or lost by the amendment. But there are facts in this case that do not appear to have been considered in any of the cases brought to my attention by defendants' counsel. Under the statute of California affecting the question, the owner of real estate sold under a judgment for taxes, had a right of redemption; but the time within which he was called upon to exercise it was extremely short—it being only six months. In this case, as in most others of the kind, the owner did not appear in the tax suit in any part of the case; and the whole proceedings from beginning to the end, including the sale and making of the first return and the deed and the amendment of the return and execution of the new deed, were without the presence of the owner. The return by the officer of his proceedings at the tax sale was made in the proper and ordinary course of his duty.

The act of 1851, concerning sheriffs, in force when the tax sale in question was made, provides that: "A sheriff to whom any process, writ, order or paper shall be delivered, shall execute it with diligence," etc., "and shall return it without delay to the proper court or officer with his certificate indorsed thereon of the manner of its serv-

ice or execution." St. 1851, p. 191, § 6. The act of 1864, relating to sales under judgments for taxes, provides, that a copy of the decree, "duly certified by the clerk, shall authorize the sheriff to sell the property therein described, and such copy, when executed and returned by the sheriff, shall be filed with the other papers as a part of the judgment roll." St. 1863–64, p. 400, § 1. See, also, practice act then in force, section 212.

Thus, it was a part of the official duty of the sheriff to make a certificate, and indorse it on the process, of the manner of its execution; and the process in this case by express provision of the statute was a certified copy of the decree, which when returned with the certificate of the mode of execution was under the express provision of the statute to be "filed with the other papers as a part of the judgment roll." It was intended by the statute to become a part of the authentic public record of the proceedings for the information and security of all interested in them. This record was necessary not only for the purpose of informing the owner of the fact of sale, but of its terms, in order that he might know whether it was necessary to redeem under the law to preserve his property; and if so, what amount it would be necessary to pay to effect a redemption. This record, with the certificate of sale, are the authentic, official, and only means provided by law to furnish this information, and the facts stated in this record the owner of the land was entitled to rely upon as true. It may be, if the sheriff had omitted to make any return other than to make the certificate of sale, and in due time the deed, that the want of a return would not have been fatal, the certificate and deed being correct and in due form. If this is so —but it is not necessary to decide the point now—having made a return, he was bound to speak the truth. The return being made became a part of the record of the case of which parties interested were bound to take notice, and upon which they were entitled to rely. If all the proceedings were regular, the owner was, perhaps, bound to know that a sale would be made, but he was not required to be present in person, and was not bound to know the terms upon which the sheriff actually sold otherwise than from the record made of it by the officer in his return as required by law, and for the purpose of giving this information.

In this case the sheriff made a return, which, as we have seen, formed a part of the public judgment record; and that record, the proper and only place to go for information, informed the world and the owner of the property sold, that the sheriff had sold a tract of land one mile long by half a mile wide which was in fact laid out into a city, and in part occupied as such, to the highest bidder for the sum of one hundred and seventy-five and forty-two one hundredths dollars. The owner consulting that record, and

this is the only notice he is presumed to have had, was informed that the sale was an absolute nullity on its face; and that there was nothing from which he was called upon to redeem. If he examined this record, and so concluded, he judged rightly, for the supreme court so held in this very case on a former writ of error. If years afterwards, and after the expiration of six months from the sale, the ex-sheriff can amend his return, and his deed made in pursuance thereof, showing a valid instead of a void sale, the owner relying on the false record by this act loses the right of redemption. The purchaser, it is true, loses the benefit of his purchase; but he is necessarily present at the sale at which he himself buys, and knows the actual terms of sale. He also has notice by the record of the false return, and he can call upon the sheriff to correct it in time. If it be not corrected, and the record is permitted to speak a falsehood till the six months expires, it operates as a fraud—though doubtless, unintentionally—upon the owner by which he loses his property; and the purchaser by having notice by the record of its falsity without requiring its seasonable correction, is in some sense a party to the fraud.

If, under such circumstances either must suffer, it should be the purchaser, rather than the owner, whose loss by the error is usually vastly the greater. If either must be remitted to the responsibility of the sheriff in an action for a false return, it should be the party who knows, or is bound to know, the record to be false, rather than the one who does not. That a return can not be amended to the injury of any party was held in Newhall v. Provost, 6 Cal. 86. Freeman v. Paul, 3 Greenl. 263, 264, is in point. For the very reason that it would cut off a redemption, the court refused to permit the amendment of a return by showing, in accordance with the facts, the execution of a process three days earlier than appeared by the return. So, in Thatcher v. Miller, 13 Mass. 273, the court refused to allow a return to be amended where an injury would have resulted. See, also, 45 Mo. 116; 29 Vt. 332. In Thatcher v. Miller the court observes: "For an officer to undertake, six years after a defective return, to know with certainty the performance of a particular duty, when he is daily and hourly performing similar duties upon different persons, is more than can be expected, however strong his memory. In the cases cited, where amendments have been permitted, there was something in the record by which the correction could be made." And this language was quoted by the court with approbation in Means v. Osgood, 7 Me. 148, cited by defendants' counsel. In the case now under consideration, McClatchy, the ex-sheriff, was examined. He could not remember this particular sale, and only testified as to what was done at the sale from his recollection of what his custom was at tax sales. He did

not even state that he was personally present at the sale, and the first return was made by a deputy, who would seem from the return to have made the sale; and he was not examined.

Even defendants' authorities recognize the principle stated as in Gilman v. Stetson, 16 Me. 124; Means v. Osgood, 7 Me. 147. The cases cited by defendants, are generally cases, such as where a summons, for instance, has been regularly served, but the return is defective. In such case the party has had his notice by the actual service of the process upon him, not by the return. The return is to enable the court, and others interested, to see that jurisdiction has been acquired. The party is bound to act upon the service made, and not upon the evidence furnished to the court. He has had the legal notice, and no injury is done him by correcting the record, so as to show the fact. He has had his opportunity to appear and defend. But in this case the owner was not bound to attend the sale in person, or to know the mode or form of the sale, except as he got it from the record, which the law requires the officer to make of his acts at the sale. The acts at the sale are not matters of record, except as they are made so by the return, and the owner gets his notice from that return, and not from a service on, or notice to, him personally At least, he is not bound to get it elsewhere; and there is no presumption that he gets it from any other source. If, relying on the official record, which is the only notice he is presumed to have, he is misled by a falsehood in the record, and thereby fails to redeem because the record shows nothing to redeem from, he is injured by the amendment of the record after the time of redemption is past, when it is too late to protect himself. In the other case where the service of the process is duly made, the party served has the proper legal notice, and he is not injured by the amendment showing the fact. This is the plain distinction between the two classes of cases. It does not matter that the party injured is a party generally to the action. The court has no more right to arbitrarily injure him than a stranger. The term, "not a party to the action," in some of the cases cited by defendants' counsel is loosely used. The question is, or should be, will anybody be injured by the amendment. In the case of a party, the amendment is allowed, not because he is a party, but because being a party, and duly notified, he has all the opportunity to which he is entitled, and he is not in fact injured by making a correct record of matters already within his knowledge. Returns are only allowed to be amended by courts in furtherance of justice. The amendment of a return, after a right of redemption is lost, by a party relying upon the false return, would certainly not be in furtherance of justice. It is true, that it is the duty of the owner by statute

to make reasonable efforts to ascertain if there is any tax against him, and if so, to pay it, and thus avoid a sale of his property; but we are looking at the question in its legal aspect, and every citizen is entitled to stand upon his strict legal rights. No one familiar with the operation of the tax laws and sales, in this state at least, I apprehend, can doubt that it is for the interest of the citizen—and such interest is the interest of the public upon the whole, as well as of the individual citizen and the interest of justice —that in one-sided proceedings, without actual notice to the owner to divest his title to real estate for non-payment of taxes, the officer should be held to a rigid compliance in all important particulars with the statute upon the subject, and so the authorities in this state all hold; and that the official records of these proceedings, of which the public is bound to take notice, should be required to speak the truth, so that those interested shall not be misled to their injury. Our tax laws are complicated, and different taxes, and parts of taxes, are payable at different times. The taxpayer is required to hunt up his taxes, and seek the tax gatherer, instead of the tax gatherer seeking the taxpayer, or even notifying him individually of the tax against him.

These circumstances, together with careless assessments, especially of real estate— sometimes to wrong parties, to unknown owners, to different persons, and the like— render it difficult, if not next to impossible, for the citizen of average intelligence even, to know when he is through paying taxes for any given year. Under all these difficulties, and where officers charged with the execution of the law, and whose special duty it is to thoroughly familiarize themselves with their provisions, often themselves commit errors, it is not remarkable that honest citizens, absentees, women, and children, inheritors of estates of deceased persons often absent, who would willingly pay their taxes, and who endeavor to do so, sometimes make slips, and receive the first notice of an unpaid tax from the dealer in tax titles, when, with deed in hand, he demands possession of their property already sold, and the time of redemption expired. Where the period allowed for redemption from a tax sale is only six months, the time of redemption is so short as to make the right itself little less than a delusion—a right in name rather than in substance. One who has failed to find and pay the tax in time to prevent a sale would scarcely be likely to learn of the sale within six months afterwards, unless he should chance to require an examination of the title for the purpose of a mortgage or sale. Even then, professional searchers of records and experts sometimes fail to make the discovery. One can hardly have occupied a seat upon the bench, or have been a practicing attorney long in this state, without having cases of tax sales and deeds

brought to his attention, wherein the taking of the property by the purchaser would be little short of downright plunder, effected under the forms of law.

Parties are not likely, willfully, or knowingly, to allow property of large value to be thus sacrificed without redemption. There is usually positive ignorance, or misapprehension, which, to a great extent, takes away actual culpability.

While no sympathy is due to the man who knowingly or willfully evades the payment of his share of the public burdens, or from culpable negligence fails to pay his taxes levied for the support of the government which protects him, it is, perhaps, upon the whole, fortunate, that the carelessness or ignorance of those charged with the execution of the tax laws, so often leaves an avenue of escape to the really honest, though unfortunate delinquent. At all events the interests of justice manifestly require the proceedings in tax cases to be in the strictest conformity to law in all essential particulars. I know nothing of the character of the delinquency in this particular case; but one rule must be established for all falling within the same legal principles. I think the amendment of the return and execution of the second deed under the conditions of this case so as to cut off the right of redemption not made in furtherance of justice, and that it was unauthorized by law. It may well be questioned whether a tax levied in solido, upon a whole tract of large extent laid out into city lots, and in part actually occupied as such, like this, and owned by a large number of different persons, as appears from the findings was the case here, is valid. And the character of the levy appears upon the face of the judgment roll. But under the view I take upon the points discussed, it will be unnecessary to consider the points made upon the invalidity of the proceedings prior to the sale.

The original complaint was filed in this case soon after the cause of action accrued, November 8, 1866, twelve years ago. Special findings have been prepared presenting fully all the facts upon which the rights of the parties depend. Should there be any error in the conclusions of law drawn from the facts, the appellate court will be able to reverse or modify the judgment, and render such final judgment as the rights of the parties may require without any further trial in this court, thereby ending a long, tedious, expensive, and troublesome litigation.

Under the view I take, there is no title in any of the defendants, and no outstanding title to any portion of the premises which are specifically stated in the findings of fact to be in the possession of the several defendants therein named, other than the lots excepted in the judgment ordered, and the plaintiff is entitled to judgment. There must be a judgment for plaintiff in accordance with the order appended to the findings.